IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTHONY LOUIS FISHER, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:13-cv-3451-K-BN |
| | § | |
| WILLIAM STEPHENS, Director | § | |
| Texas Department of Criminal Justice | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Anthony Louis Fisher, a Texas prisoner, has filed an application for

writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons explained below,

the application should be denied.

**Background**

In December 2001, a Dallas County jury found Petitioner guilty of murder, and

he was sentenced to 40 years' imprisonment. *See State v. Fisher*, F-0152054-UR (265th

Judicial Dist. Ct., Dallas Cnty., Tex.). The Waco Court of Appeals affirmed his

conviction and sentence. *See Fisher v. State*, No. 10-02-057-CR, 2003 WL 367896 (Tex.

App. – Waco Feb. 19, 2003).

Petitioner was allowed to file an out-of-time petition for discretionary review

("PDR"), *see Ex parte Fisher*, No. AP-76566, 2011 WL 2149479 (Tex. Crim. App. May

25, 2011) (per curiam), which – as to the timeliness of Petitioner's federal habeas

application – means that Petitioner was "'restore[d] ... to the position he was in when he first possessed the right to petition for discretionary review.'" *Hernandez v. Thaler*, 630 F.3d 420, 429 (5th Cir. 2011) (quoting *Salinas v. Dretke*, 354 F.3d 425, 429 (5th Cir. 2004), *overruled by Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009) (in which the Supreme Court held that "where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A)")).

The Texas Court of Criminal Appeals then refused Petitioner's out-of-time PDR [Dkt. No. 13-2 at 1-9]. *See Ex parte Fisher*, PD-1046-11 (Tex. Crim. App.).

Petitioner filed a second state habeas application. *See Ex parte Fisher*, WR-75,733-02. The state habeas court issued findings and recommended that the writ be denied on February 20, 2013. *See* Dkt. No. 15-7 at 82-91. And, on March 27, 2013, the Court of Criminal Appeals denied Petitioner's state habeas application without written order on the findings of the trial court without hearing. *See* Dkt. No. 15-7 at 2.

Petitioner declares that he placed his federal habeas application in the prison mailing system on August 21, 2013. *See* Dkt. No. 3 at 10.

In addressing Petitioner's claim that the evidence was factually insufficient to support his conviction on direct appeal, the Waco Court of Appeals set forth the following statement of facts concerning Petitioner's trial:

> The State presented evidence showing that a week before the shooting in question, Fisher had approached Shatairra Guinyard and a group of boys from the Frazier Courts Apartments and asked them which one had

gotten his car. He then said, "y'all not going to be satisfied until one of you niggers come up missing." Just prior to the shooting, Fisher went with others to Frazier Courts after learning that a friend had been beaten up there. Shortly after arriving at the apartments, Fisher started firing a 9 mm Glock pistol in the direction of a courtyard where a number of people had gathered for a party. The victim, Aundrell Calahan, was shot as he was trying to escape the gunfire. Police recovered 18 shell casings that had been fired from Fisher's pistol. Ballistics tests showed that the bullet found in Calahan was of the same caliber as Fisher's pistol. The State's firearm examiner could not determine whether the bullet found in the body was fired by Fisher's pistol.

[On direct appeal,] Fisher refer[red the state court of appeals] to evidence that buildings blocked any shot he had at Calahan; evidence that other shots were fired at the time he fired his gun; evidence, including his own statement, indicating that he was fired upon by several men running in his direction while shouting gang slogans; and evidence showing the State's failure to connect the bullet found in Calahan's body to his pistol.

Evidence was conflicting as to the nature of the view Fisher would have had from where he was shooting toward the courtyard where Calahan was shot. Some witnesses indicated he had a limited view, whereas others testified that he had a clear view without any obstruction.

Several witnesses testified that they heard shots other than those fired by Fisher. Detective Ned of the Dallas Police Department seemed to feel that other shots were fired. However, no one but Fisher, in his statement to police, indicated that he or she had seen any other gunman. The only other weapon recovered and shown to have been at the scene was found to be inoperable. No bullet other than the fatal bullet was located, and no shell casings were found other than those fired by Fisher. One witness says she saw Calahan shot as Fisher was firing and Calahan was trying to escape from the gunfire.

Some witnesses saw a group of people running before Fisher began shooting. One witness testified that they were running before he pulled up. Other witnesses did not see anyone running. Only Fisher, in his statement to police, indicated that those running were yelling gang slogans and shooting at him.

*Fisher*, 2003 WL 367896, at *1-*2.

Through his federal habeas application, Petitioner raises three grounds: (1) that

the evidence is insufficient to support his conviction; (2) that his trial counsel provided constitutionally ineffective assistance; and (3) that the prosecutor knowingly used false and perjured testimony to obtain a conviction. *See* Dkt. No. 3 at 6-7; *see also* Dkt. No. 4.

### Legal Standards

A federal court will not reach the merits of claims denied by the state court on state procedural grounds if the state-law grounds are independent of the federal claim and adequate to bar federal review. *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *modified by Martinez v. Ryan*, 132 S. Ct. 1309, 1315, 1316-19 (2012). But, if the state procedural determination is based on state grounds that were inadequate to bar federal habeas review, or if the habeas petitioner shows than an exception to the bar applies, the federal court must resolve the claim without the deference that the the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") otherwise requires. *See Woodfox v. Cain*, 609 F.3d 774, 794 (5th Cir. 2010) (the AEDPA's deferential standard of review would not apply to a procedural decision of the state court); *Miller v. Johnson*, 200 F.3d 274, 281 n.4 (5th Cir. 2000) ("Review is *de novo* when there has been no clear adjudication on the merits." (citing *Nobles v. Johnson*, 127 F.3d 409, 416 (5th Cir. 1997))); *Mercadel v. Cain*, 179 F.3d 271, 274-75 (5th Cir. 1999) ("the AEDPA deference scheme outlined in 28 U.S.C. § 2254(d) does not apply" to claims not adjudicated on the merits by the state court).

And, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785-86 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court

must determine what arguments or theories supported or … could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* at 786 (internal quotation marks omitted).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no farther." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87; *accord Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n] for which federal

habeas relief is the remedy." (internal quotation marks and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e) (1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 131 S. Ct. at 784 ("[D]etermining whether a state court's decision resulted from an unreasonable legal

or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

In sum, Section 2254 creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S. Ct. at 784.

## Analysis

## I.      Ground One – Sufficiency of the Evidence

Petitioner argues that the evidence is insufficient to support his murder conviction. *See* Dkt. No. 3 at 6; Dkt. No. 4 at 6-10.

This claim was addressed in the context of factual sufficiency on direct appeal and was rejected. The Waco Court of Appeals held:

> Having reviewed all the evidence in the manner previously described, we conclude that the proof of guilt is not so obviously weak as to undermine confidence in the jury's determination, and that the proof of guilt is not greatly outweighed by contrary proof. We hold that the jury's finding of guilt, including its rejection of any self-defense claim, was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Consequently, we hold that the evidence is factually sufficient to support Fisher's conviction, and overrule issue two.

*Fisher*, 2003 WL 367896, at *2.

-8-

On state habeas review, this claim was determined to be both not cognizable and – because the issue was raised and rejected on direct appeal – procedurally barred. *See* Dkt. No. 15-7 at 86.

Here, Petitioner again presses a factual sufficiency challenge. *See, e.g.*, Dkt. No. 4 at 6-10 ("In reviewing a challenge to the factual sufficiency of the evidence .... A review of the factual sufficiency of the evidence is conducted under [*Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).]... Self-defense is subject to a factual sufficiency review...."). But such a claim is not cognizable on federal habeas review.

> The factual sufficiency test is rooted in the Texas Constitution, and at one time, was followed by the Texas courts in reviewing the elements of an offense on appeal. *Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002), citing *Clewis*.... The test requires more scrutiny than the federal constitutional standard set forth in *Jackson v. Virginia*[, 443 U.S. 307 (1979)]. *Id.* at 357-58. Federal courts do not apply the *Clewis* standard, which is based on Texas state law, in federal habeas review. *Woods*, at 358. Moreover, the Texas Court of Criminal Appeals has overruled the factual sufficiency standard of *Clewis* and has held that the legal sufficiency standard, enumerated in *Jackson v. Virginia*, is applicable in determining whether the evidence is the sufficient to uphold each element of the offense. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The claim regarding the factual sufficiency of the evidence will therefore be dismissed because it is not cognizable in this § 2254 proceeding.

*Bogany v. Stephens*, Civ. A. No. H-13-2857, 2014 WL 4537786, at *14 (S.D. Tex. Sept. 11, 2014); *accord Malone v. Stephens*, Civil Action No. 4:13-cv-718-O, 2015 WL 408045, at *17 n.6 (N.D. Tex. Jan. 30, 2015).

To the extent that Petitioner's sufficiency of the evidence claim in this Court is one challenging the legal sufficiency of the evidence, it is not clear that such a claim is procedurally defaulted. Even Respondent concedes that, "[i]n light of the unusual

timing and therefore posture" of Petitioner's sufficiency of the evidence claim, it may be necessary for the Court to consider its merits. Dkt. No. 16 at 13.

Indeed, before Petitioner was granted leave to file an out-of-time PDR in May 2011 – in which the sole claim that he presented was that the Waco Court of Appeals, in 2003, applied an incorrect standard to his sufficiency of the evidence claim, *see* Dkt. No. 13-2 at 1-9 (PDR filed June 24, 2011) – the Court of Criminal Appeals handed down *Brooks*, which overruled the factual sufficiency standard of *Clewis* and held that the *Jackson v. Virginia*'s legal sufficiency standard applies to determine whether the evidence is the sufficient to uphold each element of the offense. Therefore, because the proper standard to be applied to sufficiency of the evidence claims was in flux during the extended period of Petitioner's direct appeal, the undersigned will not find that the sufficiency of the evidence claim presented to the state's highest court on direct appeal was merely a factual sufficiency challenge and thus find Petitioner's legal sufficiency challenge to be procedurally defaulted. *Contra Brantley v. Stephens*, No. 4:13-cv-883-A, 2014 WL 4960668, at *3 (N.D. Tex. Oct. 2, 2014) ("As petitioner raised his sufficiency claim in the state's highest court only in his state habeas application, the Texas Court of Criminal Appeals's denial of the application was based on an independent and adequate state procedural ground such that his sufficiency claim is procedurally defaulted." (citations omitted)).

Instead, because it is clear that any legal sufficiency of the evidence claim now before this Court – even absent the deference that the AEDPA otherwise requires – is without merit, the undersigned will assume the claim is not defaulted and examine its

merits. *See Busby*, 359 F.3d at 720 ("Although the question of procedural default 'should ordinarily be considered first,' we need not do so 'invariably,' especially when it turns on difficult questions of state law." (quoting *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997))).

A federal court may not disturb a state criminal conviction on legal insufficiency grounds unless no rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *see also Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991). The evidence must be viewed in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 319; *Gibson*, 947 F.2d at 781. This standard of review applies in both direct and circumstantial evidence cases. *See Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990).

Federal courts are bound by state statutes and case law in determining the elements of an offense. *See Foy v. Donnelly*, 959 F.2d 1307, 1314 (5th Cir. 1992). Applicable to Petitioner's indictment, under Texas law, murder is defined as intentionally or knowingly causing the death of an individual and, alternatively, as intentionally causing serious bodily injury while committing an act clearly dangerous to human life that causes the death of an individual. *See* TEX. PEN. CODE § 19.02(b)(1), (2).

Here, Petitioner asserts that no rationale trier of fact would have found against him on the issue of self-defense. *See* Dkt. No. 3 at 6; Dkt. No. 4 at 8. But Petitioner's legal sufficiency of the evidence argument amounts to nothing more than his disagreement with the verdict. He has failed to show that no rational trier of fact could

have found the charged elements of murder beyond a reasonable doubt, particularly in light of the eyewitness testimony concerning the murder and the evidence linking the recovered bullets and shell casings to Petitioner's weapon. *See, e.g.*, Dkt. No. 14-2 at 66-68 (testimony identifying Petitioner as shooting toward the apartment courtyard); *id.* at 76-77 (testimony that, although other gunshots were heard elsewhere, witness only saw Petitioner standing at his car shooting); Dkt. No. 14-3 at 7-10 (testimony identifying Petitioner as exiting his car, having a gun, and commencing shooting); Dkt. No. 14-4 at 68-76 (testimony identifying Petitioner as shooting from his car with the same weapon later recovered); Dkt. No. 14-3 at 86-90 (testimony concerning a large number of shell casings' being found at Petitioner's approximate location at the time of the shooting); Dkt. No. 14-5 at 44-55 (testimony linking the shell casings to the firearm used by Petitioner).

Petitioner's first ground for habeas relief should be denied.

## II.   Ground Two – Ineffective Assistance of Trial Counsel

Petitioner claims that his trial counsel was constitutionally ineffective for (1) failing to object to the introduction of his statement to police and (2) failing to present an expert witness to support his claim of self-defense. *See* Dkt. No. 3 at 6; Dkt. No. 4 at 11-31.

The undersigned has reviewed the Petitioner's Sixth Amendment claims under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See* 466 U.S. at 687-88. To be cognizable

under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 131 S. Ct. at 791. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have

had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

To demonstrate prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 131 S. Ct. at 791. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 792 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S. Ct. at 792.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated ineffective-assistance claims on the merits, this Court must review Petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403, 1410 (2011). In such cases, the "pivotal question" for this Court is not "whether defense

counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 131 S. Ct. at 785; *see also id.* at 788 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, the AEDPA does not permit a *de novo* review of state trial counsel's conduct in these claims under *Strickland*. *See id.* at 785-86. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 785.

As to Petitioner's contention regarding his statement to police, his argument is that trial counsel was ineffective for failing to object to its introduction into evidence. *See, e.g.*, Dkt. No. 18 at 8-10 ("Absent the affirmative waiver of any error by Petitioner's counsel, the issue of voluntariness [of Petitioner's confession, pursuant to *Miranda*,] could have been reviewed on appeal. By volunteering 'no objections' to the admission of Petitioner's statement, ... counsel foreclosed any such review. This single act was sufficiently 'egregious' to amount to ineffective assistance of counsel." (citing *Ex parte Felton*, 81 S.W.2d 733 (Tex. Crim. App. 1991)).

The state habeas court found that, since this issue was raised and rejected on direct appeal (because no prejudice was shown), this contention was procedurally barred from consideration by that court. *See* Dkt. No. 15-7 at 85-86. And Respondent

correctly urges this Court to "look through" to the Waco Court of Appeals's decision as "the last reasoned opinion" issued on this claim. *See* Dkt. No. 16 at 20-22. Here, "a state habeas decision [ ] found that the petitioner's argument[] has been 'previously considered and rejected' on direct appeal[, and] ... 'in light of that determination' [this Court should] 'examine the last clear state court decision of any substance.'" *Leachman v. Stephens*, 581 F. App'x 390, 395 (5th Cir. Sept. 4, 2014) (quoting *Divers v. Cain*, 698 F.3d 211, 216 (5th Cir. 2012)); *see Ylst v. Nunnemaker*, 501 U.S. 797, 804 n.3 (1991) ("Since a later state decision based upon ineligibility for further state review neither rests upon procedural default nor lifts a preexisting procedural default, its effect upon the availability of federal habeas is nil – which is precisely the effect accorded by the 'look-through' presumption.").

Petitioner has failed to show that the Waco Court of Appeals's application of *Strickland* was unreasonable. That court held that, even if the first prong of *Strickland* was met – that is, even if the court assumes that counsel's failure to object was an unprofessional error – Petitioner "failed to show that the results of the proceeding would have been different." *Fisher*, 2003 WL 367896, at *3. And Petitioner's contention that "[t]his single error[ – the failure to object – ]was sufficiently 'egregious' to amount to [per se] ineffective assistance of counsel[,]" Dkt. 18 at 9, is neither correct nor supported by his cited authority.

As the Dallas Court of Appeals held in *Clifton v. State*, in distinguishing Petitioner's authority, *Ex parte Felton*, "[i]n order for an single deficiency to constitute ineffective assistance of counsel the deficiency must be so 'serious' that the error alone

could have changed the results of the proceedings." *Clifton v. State*, No. 05-09-00006-CR, 2009 WL 3401980, at *4 (Tex. App. – Dallas Oct. 23, 2009, no pet.). In *Felton*, the "failure to challenge a void prior conviction used to enhance punishment rendered counsel ineffective because the conviction 'in all probability' affected the jury's assessment, as 'it started their assessment at a higher level.'" *Clifton*, 2009 WL 3401980, at *4 (quoting *Felton*, 815 S.W.2d at 735-36). As in *Clifton*, here there is "substantial evidence from which the jury could have established [Petitioner's] guilt," 2009 WL 3401980, at *5; moreover, the Waco Court of Appeals held that the trial court reasonably determined that Petitioner's statement was voluntary and also found the statement to be somewhat exculpatory, *see Fisher*, 2003 WL 367896, at *3. Therefore, Petitioner has failed to show that there is no reasonable basis to afford this state-court determination the benefit of the doubt.

In denying Petitioner's second ineffective-assistance contention – concerning his need for expert testimony as to self-defense – the state habeas court found that Petitioner "fail[ed] to state what additional evidence the medical examiner could have presented. Furthermore, counsel cross-examined the medical examiner presented by the State." Dkt. No. 15-7 at 86.

> [C]omplaints of uncalled witnesses are not favored on habeas review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified to are largely speculative. *See Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981); *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978). To prevail on such a claim, a petitioner must show that the witness's testimony would have been favorable and that the witness would have testified. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). And where the only evidence of missing witnesses' testimony is from the

> defendant, the court views claims of ineffective assistance with great
> caution. *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986).

*Dennis v. Quarterman*, No. 4:07-cv-20-Y, 2008 WL 1808546, at *4 (N.D. Tex. Apr. 21, 2008).

As in *Dennis*, all Petitioner offers to support his argument that the state habeas court unreasonably denied this ineffective assistance argument are "conclusory assertions" – which "are not competent evidence that any of the missing witnesses would have provided favorable testimony or were available to testify." *Id.* at *5. Petitioner thus again fails to show that there is no reasonable basis to afford this state-court determination the benefit of the doubt.

Petitioner's second ground for habeas relief should be denied.

## III.    Ground Three – Use of False Testimony

Petitioner argues that, at his trial, the prosecution knowingly used false and perjured testimony – "[a]ll of the State's witnesses gave false, misleading, and perjured testimony" – to obtain a conviction. Dkt. No. 3 at 7; Dkt. No. 4 at 32-41. As to this claim, the state habeas court determined that Petitioner "failed to prove that the testimony presented was perjured. As acknowledged in the Court of Appeals opinion, much of the testimony differed. However, the jury heard the testimony and made a decision to find [Petitioner] guilty." Dkt. No. 15-7 at 87.

"The Due Process Clause of the Fourteenth Amendment forbids the government from knowingly using, or failing to correct, false testimony." *United States v. Mason*, 293 F.3d 826, 828 (5th Cir. 2002) (citing *Giglio v. United States*, 405 U.S. 150, 153

(1972); *Napue v. Illinois*, 360 U.S. 264, 271 (1959)); *see also Isaac v. Cain*, 588 F. App'x 318, 327 (5th Cir. Oct. 3, 2014) (per curiam) ("Under *Napue*, 'a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment.'" (quoting 360 U.S. at 269) (citations omitted)).

"To establish a due process violation based on the government's use of false or misleading testimony, a petitioner must show (1) that the witness's testimony was actually false, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false." *Fuller v. Johnson*, 114 F.3d 491, 496 (5th Cir. 1997).

But "due process is [ ] implicated by the prosecution's introduction or allowance of false or perjured testimony [only when] the prosecution actually knows or believes the testimony to be false or perjured; it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements." *United States v. Brown*, 634 F.2d 819, 827 (5th Cir. 1981) (citations omitted). Thus,

> [w]hen attempting to show perjured testimony, the false or misleading nature of certain testimony cannot be established simply by pointing to contradictory testimony from other witnesses, inconsistencies within a witness's testimony, or conflicts between or among written statements and live testimony. Such matters go only to the weight of the evidence and the credibility of the witness.

*Craig v. Director, TDCJ-CID*, No. 5:07-cv-167, 2013 WL 4711483, at *14 (E.D. Tex. Aug. 30, 2013) (citing *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990)).

At most, here Petitioner has shown – just as the state habeas court found – that there was contradictory witness testimony and that there may have been inconsistencies within certain witness's testimony. *See* Dkt. No. 4 at 35-37. As the state

habeas court found, Petitioner merely raises his dissatisfaction with the jury's resolution of any inconsistencies. Those inconsistences "go only to the weight of the evidence and the credibility of the witness" and do not rise to the level of a due process violation. *Craig*, 2013 WL 4711483, at *14; *see Rice v. Quarterman*, Civ. A. No. H-06-2051, 2008 WL 4425560, at *14 (S.D. Tex. Sept. 30, 2008) ("Here, petitioner alleges in conclusory terms that the eyewitness's testimony 'defies nature and reality' because of her location relative to the scene of the offense. Petitioner, however, presented these inconsistencies and contradictions to the jury through his cross-examination of the eyewitness. Such contradictions or inconsistencies established a credibility question for the jury, but they do not provide a basis for relief from the conviction on the grounds that the prosecutor knowingly used perjury." (citing *Koch*, 907 F.2d at 531)).

Further, while Petitioner alleges that prosecution had evidence that some testimony was false but failed to correct the record, *see* Dkt. No. 4 at 38, "[t]here is absolutely no evidence whatever that the prosecutor sought to elicit perjurious testimony from the witnesses." *Cross v. Johnson*, 169 F. Supp. 2d 603, 623 (N.D. Tex. 2001).

Petitioner's third ground for habeas relief should be denied.

## Recommendation

Petitioner's application for writ of habeas corpus should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 20, 2015

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE